# CHARLESTON.

## STATE v. STANLEY PATACHAS.

Submitted April 1, 1924.   Decided April 8, 1924.

1.   INTOXICATING LIQUORS.—*Method of Manufacture of Intoxicating Liquors From Mash Immaterial.*

A person who makes, has in his possession, or on his premises, or on the premises of another, or has under his control, or an interest in any mixture of fermenting substances or ma-

96 W. Va.

terials, such as corn meal, or other crushed or ground cereals, fruits or roots combined with water or other liquids or substances, commonly known as "mash", or any mixture of like kind or character, for the purpose of making intoxicating liquors, is guilty of a misdemeanor and punishable as provided in sec. 37, chap. 32A, Code 1923, without reference to the method or manner in which the liquors may be made from such mixture, whether by fermentation or distillation. (p 205).

2.  SAME.—*Not Necessary That Use of Moonshine Still in Making Intoxicating Liquors be Shown.*

If it be shown that the purpose of the possession of such mixture was to make intoxicating liquor therefrom, it is not necessary to show that the liquor was to be made by use of a moonshine still, in order to sustain a verdict of guilty as charged. (p. 205).

3.  STATUTES.—*Where Language Unambiguous and Intent Plain, Interpretation by Court Unnecessary.*

Where the language of a statute is free from ambiguity and the intent is plain, there is no occasion for interpretation by a court. "It is not allowable to interpret what has no need of interpretation." (p. 206).

Error to Circuit Court, Tucker County.

Stanley Patachas was convicted before a Justice of  the Peace for violating the prohibition laws, and brings error.

*Affirmed.*

*Charles D. Smith,* for plaintiff in error.

*E. T· England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

On appeal from a judgment of a justice of the peace defendant was found guilty by a jury for an infraction of the prohibition laws, and sentenced to pay $100 fine, and to be imprisoned for ninety days at hard labor.

Three members of the state police armed with a search warrant found ten gallons of "mash" in a vessel behind the stove in defendant's kitchen. The mash, composed of cracked corn, peaches, lemons, prunes and water, was in a high state of fermentation. Defendant was arrested, tried

and convicted on a warrant charging him with having in his possession a quantity of ''mash'' contrary to the laws of this state. Witnesses testified that the mash when fully fermented would produce an intoxicating liquor; also that defendant's son and John Barkoski, who were in the kitchen, and defendant who was in bed, were under the influence of intoxicants. No moonshine still or any parts of a still were found. Witnesses did not know if the mash was for the purpose of making liquor by distillation or fermentation. A sample was preserved and exhibited to the jury. Defendant did not go upon the witness stand and offered no evidence.

Defendant moved the court to strike out all of the evidence and direct a verdict in his favor, which motion was refused. The court instructed the jury that there are ''two ways of making intoxicating liquors, one by distillation and the other by fermentation, ''and defendant objected and excepted, and assigns this as a point of error. Defendant offered and was refused an instruction telling the jury ''that all evidence of the intoxicating nature of the mixture exhibited as 'mash', 'pickhandle' or 'old hen' is stricken from the evidence, and you are not to consider the intoxicating nature thereof in arriving at your verdict;'' and the refusal of this instruction is another point of error.

Other instructions were given which are not complained of. One, whether offered by the state or defendant, the record does not say, told the jury in substance that if they believed defendant made, had in his possession, or on his premises, or had under his control, or an interest in, any mixture of fermenting substances or materials such as corn meal or other crushed or ground cereals, fruits or roots combined with water or other liquids or substances, or any mixture of like kind or character, before they could convict defendant, they must believe from the evidence beyond a reasonable doubt that he had the mixture as above set out commonly known as ''mash,'' or a mixture of like kind and character, for the purpose of making intoxicating liquors, and if they did not so believe, then they should find defendant not guilty.

The whole contention of defendant is that the possession

of the mixture by him did not constitute an offense unless it was shown that he had it for the purpose of making moonshine liquor by use of a moonshine still; and this the evidence failed to prove. On this theory, he says the instruction that told the jury that intoxicating liquor could be made by fermentation as well as by distillation was prejudicial; likewise the refusal to give his instruction striking from the evidence that part relating to the intoxicating nature of the mixture or "mash," was prejudicial. Although the statute in terms says the possession of any mixture of fermenting substances or materials for the purpose of making intoxicating liquors is an offense, it is argued that because the paragraph in which it is found (sec. 37, chap. 32A, Code 1923) relates to moonshine stills and moonshine liquor, therefore the legislature intended to make the possession of "mash" an offense only where the intention of the possessor is to make intoxicating liquor therefrom by distillation by means of a moonshine still. We cannot see why the interpretation of the paragraph under consideration should be influenced by the other portions of the section in which it is found, than should the interpretation of the other paragraphs be influenced by it. On the same reasoning it could be contended that the making of intoxicating liquor by moonshine still would be lawful, unless made from "mash." In other words, possession of intoxicants, made by distillation is not an offense unless they be distilled from mash; and consequently possession of mash is lawful unless it be for the purpose of making liquor by distillation by a still. The section deals with three separate and distinct offenses, namely, (1) possession, ownership and operation of a moonshine still for the purpose of manufacturing intoxicating liquors; (2) possession of moonshine liquor (and all intoxicating liquors, other than commercial whiskies obtained and stored in homes for domestic use at a time when it was lawful to do so, is prima facie moonshine liquor) ; and (3) possession or ownership of any mixture of fermenting substances or materials commonly known as "mash" for the purpose of making intoxicating liquors. Under the prohibition amendment to the constitution the manufacture of vinous or spirituous

liquors or any intoxicating drink, mixture or preparation of like nature, is prohibited except for certain purposes therein named. The word "liquors" as used in the statute embraces all malt, vinous or spirituous liquors, and any other intoxicating drink, mixture or preparation of like nature. The statute was designed to prevent the making of any intoxicating drink without reference to the means or methods employed. Liquors made by fermentation are as intoxicating as those made by distillation, and the clear design of the legislature was to carry out the mandate of the constitution which required it without delay to enact laws necessary to carry the prohibition amendment into effect. The entire statute must be read together with section 37, keeping the object and purpose of the legislature in view and the evils to be remedied. The intent and purpose is clearly manifested by the act when read as a whole. The purpose of the act would be defeated in a large measure if the statute should be construed to extend punishment only to those who possessed and operated instrumentalities for the manufacture of liquors by distillation, and give immunity to those who used the process of fermentation in the making of intoxicants. A statute is always construed in the light of the purpose for which it was passed and the evil it was designed to remedy, *Shipley* v. *County Court,* 72 W. Va. 656; *Charleston* v. *Charleston Brewing Co.,* 61 W. Va. 34. But the rules of construction have little application here. There is no ambiguity, no conflict with other parts or other acts. Where language is used which clearly and precisely expresses the intention of the legislature there is no need of interpretation. The statute says:

> "It shall be unlawful for any person to make, or to have in his possession, or on his premises, or on the premises of another, or elsewhere, or to have under his control, or an interest in any mixture of fermenting substances or materials, such as corn meal, or other crushed or ground cereals, fruits or roots combined with water or other liquids or substances, commonly known as 'mash,' or any mixture of like kind or character, for the purpose of making intoxicating liquors."
> 96 W. Va.

Then follows the clause containing the punishment. The form of indictment charges the accused with having made, possessed, etc., a mixture of fermenting substances and materials "commonly known as 'mash,' for the purpose of making intoxicating liquors." Can we, by any rule of construction, curtail the meaning and effect of this clear statute by adding to the phrase "for the purpose of making intoxicating liquors" the words "by distillation in a moonshine still"? "When the intention of the legislature is so apparent from the face of a statute that there can be no question as to the meaning, there is no room for construction. It is not allowable to interpret what has no need of interpretation." Lewis' Sutherland Stat. Constr. sec. 367; *Kelly* v. *Bowman,* 68 W. Va. 49. The intent of the legislature was to prevent the manufacture of intoxicating liquors in this state by whatever method or instrumentalities used for that purpose. The inhibition against the possession of mash for the purpose of making intoxicating liquors under consideration, found in section 37 of the act, is not in conflict with section 4 of the act which permits the manufacture of wine for domestic use (other than by moonshine still) from fruits grown exclusively in this state. The "mash" which defendant had in his possession was composed of cracked corn, peaches, lemons, prunes and water. The jury was justified in finding that defendant intended to make intoxicating liquors therefrom, under the evidence and circumstances.

Finding no error in the refusal to strike the evidence, nor in the instructions, the judgment will be affirmed.

*Affirmed.*