FANNIE B. GIBSON, *Widow, etc. v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9625)

Submitted September 6, 1944. Decided October 3, 1944.

98

*James G. Jeter, Jr.,* for appellant.
*Crockett & Tutwiler,* for appellee.

RILEY, JUDGE:

Gaines G. Gibson, trackman for Pocahontas Fuel Company, was injured on March 24, 1941, and died November 30, 1942, of cancer of the lung with multiple metastases. The State Compensation Commissioner awarded compensation to the employee's widow and children. The appeal board having set aside the award on the ground that Gibson "did not come to his death as a result of an injury in the course of and resulting from his employment", the widow prosecutes this appeal.

Before discussing whether the appeal board's basis for denial of compensation is warranted, we direct our attention to the employer's challenge of the commissioner's jurisdiction to pass upon the claim of decedent's dependents for benefits provided for by Code, 23-4-10, which provides, in part, as follows: "In case the personal injury causes death within the period of six years, and the disability is continuous from the date of such injury until date of death, benefits shall be in the amounts, and to the persons, as follows * * *." The employer argues that,

although the commissioner awarded Gibson temporary total disability benefits of one and six-sevenths weeks on September 23, 1941, on two subsequent occasions, namely, July 13 and October 23, 1942, he refused further compensation on the basis that no partial permanent disability had resulted from the injury received by decedent on March 24, 1941, and that since decedent had not objected to the commissioner's findings on the occasions subsequent to the original award such findings became final and barred the application of decedent's widow and children.

There can, of course, be no equivocation that dependents' claim for compensation must be based upon the employee's death resulting from injury within six years. The statute, above quoted, so states; but the claim for disability benefits, provided by Code, Chapter 23, and the claim for death benefits are not the same, nor is a claim for the latter a derivative one. The concept of privity between the two types of claims was negatived in *Lester* v. *Compensation Commissioner*, 123 W. Va. 516, 16 S. E. 2d 920, wherein this Court refused to the widow of the deceased employee the total balance of an award made to the husband during his lifetime, and limited recovery to her of that portion of the award which had accrued prior to his death. See also *Hogsten* v. *Compensation Commissioner*, 124 W. Va. 153, 19 S. E. 2d 439. The former case clearly denotes that any rights that may attach to an employee's claim for disability benefits are terminable upon his death when, *eo instante*, the right of his dependents to death benefits attaches. The claim for the latter being distinct from that of the employee himself, jurisdiction exists in the commissioner to determine what, if any, death benefits an applicant is entitled to receive.

The employer argues further that since the commissioner decided on July 13 and October 23, 1942, that Gibson's disability was due to causes other than the alleged injury, he had no authority, after Gibson's death, to effect an award to his dependents. The employer recognizes the continuing jurisdiction accorded the commissioner under Code, 23-4-16, but asserts that the cases of *Johnson* v. *Com-*

*pensation Commissioner*, 109 W. Va. 316, 154 S. E. 766, and *Yocomolish* v. *Compensation Commissioner*, 110 W. Va. 79, 157 S. E. 45, deny to the commissioner the right to set aside his findings except for good cause, which employer contends is lacking in this instance. As we understand the employer's position, Gibson's widow and children are precluded from participating in the fund because decedent failed to protest and appeal from the orders of July 13 and October 23, 1942, refusing partial permanent disability. Since the claims are distinct, this position is not meritorious.

The employer likewise challenges the commissioner's award of compensation to decedent's widow and children on the grounds that it was not warranted under the facts disclosed by the record, and because Gibson's disability was not continuous from the date of injury until his death. The employer points to the fact established in the record that Gibson returned to work on April 21, 1941, and continued to work either for employer or for another coal company until June, 1942. The record shows that Gibson's claim was that a piece of timber struck him in the back and side causing a mole on his right chest to be "knocked off".

On March 31, 1941, he was treated by Dr. Fox for a back complaint. Dr. Fox stated in his affidavit that on that date he found "no record where this complaint was construed as an accident." On April 4 following, Dr. Fox directed Gibson to a hospital for treatment of a small tumor which had become irritated, and Dr. St. Clair of the Bluefield Sanitarium reported: "The tumor was removed under local anesthesia, and patient allowed to return home, with instructions to report to Dr. P. R. Fox for further care. Pathological examination of the tissue removed was reported as follows: 'The specimen is a slightly raised skin tumor 1 c.m. in diameter. It is soft and purplish in color. Microscopic examination shows this to be a basal cell epithelioma.' " On this same report there appears: "DIAGNOSIS OF INJURY: Tumor of Chest Wall, Traumatized (?)." The record does not disclose any further medical

treatment until June 18, 1942, when claimant was again referred to Bluefield Sanitarium where from an examination, Dr. Hosmer concluded that "The chest findings, together with the history of this case is believed to definitely indicate metastatic malignancy in the right chest. The prognosis is poor." In September, 1942, Dr. C. W. Stallard reported as follows on Gibson's condition: "This patient has some type of metastatic changes in the chest which, in all probability, is the result of metastasis from the injured nevus. Since all his difficulty dates back to his history on March 24, 1941, his present condition certainly must be connected with his injury. Prognosis in this case is grave and he is not able to work and will never be." On October 19 Dr. Hoge advised the medical director of the Workmen's Compensation Fund that in May, 1942, Gibson had "a well developed melanocarcinoma at the site of his original scar and it already metastasized to the axilla. I am sure that you, as all surgeons, would agree that it is difficult to prove that a melanocarcinoma is or is not due to trauma."

The appeal board decided the case upon the same record presented before the commissioner. At the hearings before the commissioner claimant introduced no evidence. The employer called three medical witnesses: Dr. R. H. Fowlkes, Dr. D. F. Hosmer, and Dr. Hampton St. Clair. Dr. Fowlkes testified that he had treated decedent frequently from the latter part of October, 1942, until decedent's death on November 30, 1942. In response to a hypothetical question, which contained the hypothesis that the decedent had suffered a single injury, which knocked off a mole, on March 24, 1941; that he continued to work until March 31, 1941; and that on April 7, 1941, Dr. St. Clair had removed a tumor about the size of a five cent piece, which microscopic examination had disclosed to be a basal cell epithelioma, witness testified that he did not believe one traumatic injury would produce a cancer. On cross-examination this witness further testified that the injury to the existing mole may have accelerated a condition

then present, and that he could not "definitely state that it positively was" not the result of the injury. But on re-direct examination, he expressed the opinion that the cancerous condition was not the result of the injury. Dr. Hosmer, a medical examiner for the Compensation Commission, connected with the Bluefield Sanitarium at Bluefield, testified that the decedent was admitted to the hospital on April 7, 1941, where a mole was excised, which decedent stated had been struck by a piece of timber; that a specimen of the excised matter, having been referred to a pathologist, was found to be a type of cancerous lesion, and that it would be unusual for a single trauma, such as described by decedent, to produce a malignant change in such lesion; "that the type trauma which usually produces cancer in a lesion of this type, or causes it to become cancerous, is repeated over a long period of time"; and that while it is possible for one trauma to create a malignancy in the lesion of the type which Gibson had, it was improbable. Dr. St. Clair, also connected with the Bluefield Sanitarium, expressed the opinion that "it is improbable that the alleged injury caused the malignancy of this pre-existing lesion", and it is doubtful that there is a causing relationship between the trauma and decedent's death; that it was doubtful that the relation of the injury to the lesion was a causing factor in decedent's death. However, Dr. St. Clair admitted he did not know and stated "nor do any of us" know.

In the appraisal of this record, the order of the appeal board, and not that of the commissioner, comes before us for review (*Manning* v. *Compensation Commissioner*, 124 W. Va. 620, 625, 22 S. E. 299), and this Court will not reverse the board's findings except for error of law or where the finding is against the clear preponderance of the evidence. *Goble* v. *State Compensation Commissioner*, 111 W. Va. 404, 407, 162 S. E. 314. In *Stevely* v. *State Compensation Commissioner*, 125 W. Va. 308, 24 S. E. 2d 95, this Court held that the decision of the compensation commissioner which has been affirmed by the appeal board will not be disturbed on appeal, if the decision is supported by any

reasonable appraisal of the evidence. In view of the conflict of the medical evidence, we cannot say that the finding of the appeal board was clearly wrong or against the clear preponderance of the evidence. It follows, therefore, that its order must be affirmed. This conclusion obviates the necessity for consideration of the contention that Gibson's disability was not continuous—a prerequisite under Code, 23-4-10, to an award of compensation to a widow or dependent children.

The order of the appeal board is affirmed.

*Affirmed.*